Next case on our docket is 22-20334, Ford v. ConocoPhillips. Ms. Grant. Good morning and may it please the court. Ashley Grant on behalf of Bedrock Petroleum Consultants LLC and Bedrock PC 1099 LLC. The crux of the matter before the court today is whether Plaintiff Shawn Michael Ford can be compelled to arbitrate his claim for unpaid overtime under the FLSA against ConocoPhillips and who, a court or an arbitrator, can make that determination. Why didn't y'all just have him sign that exhibit whatever, H or something that would say he would arbitrate with Conoco? There's nothing in the record to establish why that was done or not done. I will say looking at the class members, this may have been one that slipped through the cracks that he did not sign, but there isn't that exhibit H here. But regardless of there being a presence of that exhibit H that you're referencing in the MSA, he did sign the exhibit. His master consulting agreement with Bedrock PC did include mandatory arbitration language that governed any and all claims arising from that agreement, and it's that master consulting agreement that was why he was retained and then ultimately assigned to ConocoPhillips. More importantly, in that, there's section two where he explicitly acknowledges that Bedrock has been assigned a master of services agreement with a client, here being ConocoPhillips, and that he expressly agreed to be bound by the terms and obligations of that MSA. I'm well aware of that. I'm wondering just sort of physically, so Bedrock's the one that they do a deal with Conoco. They send him to Conoco. How does he get, I mean, sort of how does he get to Conoco? Is it just Bedrock says head down the street to this address? So you've got ConocoPhillips has a master services agreement with its Bedrock Petroleum consultants to, okay, you're going to provide us with these services in the form of independent of itself goes in and finds these independent contractors, which Mr. Ford being one of them, and it then assigns, okay, we're going to assign you, we're going to contract with you, and we can assign you to projects. You know, Bedrock assigns a contractor. I mean, I'm talking about physically. Physically, he's sent to the project by Bedrock. Yes, yes. He is told, okay, here's our assignment for you. We're going to retain you. Okay, now we've got an assignment for you. Here it is. Go and work for our client, ConocoPhillips. It's kind of like if you call the Great Maids Company. I'm just making up that name. They send you some maid. You pay the Great Maids Company, and they then pay the maid. Exactly. So here, Bedrock was the one that we contracted with Mr. Ford. We said, okay, go out and work for our client, ConocoPhillips. And they paid him. No, we were the ones. No, I mean Bedrock paid him. Yes, Bedrock is the one who paid him. You all. Yes. You paid him. Yes, Bedrock paid him. Conoco never gave him a dime. No. So he was volunteering for Conoco then under his argument because I don't even, the notion that they didn't pay him enough, they didn't pay him anything. Bedrock did. Bedrock did, but part of it was retention as an independent contractor. And then part of that agreement in that relationship was that, okay, you then will go to one of our clients. We then chose the client, ConocoPhillips. And in that relationship, we took the burden of we will find those contractors, we will pay them, we will handle all of the 1099s and the contracting, and also including entering into the agreements and the contractions such as the arbitration provision they're in. Now remember one of the things, he would not have been assigned to ConocoPhillips had it not been this master services agreement with Bedrock. So if he had not signed that, it's not like he could have then gone out and gone to ConocoPhillips. Okay. So we are not able to overrule Newman whether we should or shouldn't. So you asked us to, I'm sorry, but that's not an appropriate argument at this level. It may be at an en banc level, but that didn't work for Newman. Anyway, how can you distinguish Newman? So first, you know, how we can distinguish Newman is that section two. So keep in mind Newman, there was a reference to you will be assigned to one of our clients, and that was it. Here, we've got a full-blown contract that not only says you're going to be assigned to a client under the terms of your agreement with us, but also you agree to be bound by the terms of that master services agreement with that client. You agree to assume the indemnities and the obligations that are in that master services agreement, and if that master services agreement that we had with our client, with Bedrock, excuse me, with a mandatory arbitration provision. That's not in Newman. That is not in Newman, no. No. There's nothing in Newman that has the section two. There's no similar provision as that section two. Also, I'll note here, there's a section 13 where we specifically state this agreement hereby incorporates all the terms and relevant documents of the master services agreement with the company. Why was your first argument that we should overrule Newman if Newman isn't really on point? Because at this point, because the district court said Newman applies, our hands are bound, we can't . . . because of Newman, we can't . . . actually, because of Newman, we can take up the issue of arbitrability, and because of Newman, we find that it's unenforceable against a third-party signatory. Here, yes, you're right. Newman is . . . Your argument to us is the district court erred. That's what appellants usually say. Yes. Yes. The district court . . . . . . said that you should overrule all your cases, Judge, with the panel. Yes. Well, in part of the agreement, too, we do point out in our appellate brief that even, you know, assuming Newman . . . noting that Newman would stay, we point out first under the orderliness argument, Britannia U, which is the argument that the delegation . . . when there's a delegation clause, the enforcement against a third-party non-signatory . . . excuse me, the enforcement against a non-signatory is something that's delegated to the arbitrator, but more importantly, we also point out that . . . the distinguishment between Newman and here, and that's at section 2 and section 13. In addition, you know, even if the court were to take up the issue and say, okay, the court . . . the issue of arbitrability belongs with the court, not an arbitrator, there's still the issue where the district court also erred with respect to refusing to compel arbitration on the doctrine of intertwined claims estoppel. Could you compel Ford to sign the exhibit to the master service agreement between Bedrock and ConocoPhillips? Unfortunately, his assignment is over, so he's no longer retained by us as an independent contractor, so it's not something that we could, you know, fix post facto. What does it . . . I mean, I'm saying going into court, if you say you agreed to require . . . you agreed with Conoco that you would require all your consultants to sign this, you say he was required to comply with your agreement with Conoco, why can't you go into court and compel him to sign exhibit 2? Could you? I think because that contract is over, the assignment is over, I think we couldn't fix it post facto. There is the argument with the incorporation by reference, which my co-counsel, Ms. Cheesman, will address more in depth. Arguably, by agreeing to be bound by the terms of the MSA, that MSA did include that exhibit H, which is that arbitration agreement. There could be the argument that under the incorporation by estoppel signing our agreement with Bedrock, which incorporated the whole agreement with Ford, that also included the exhibit A, and that's been signed, but I'll let Ms. Cheesman . . . You're running out of time, so I just want to make sure you clearly explain why this and PC 1099 LLC and the fact that one signed one and one signed the other, and so they're not, you know, they're different. You had an argument on that. Can you please state it? Well, that argument goes into the incorporation by reference document, so our agreement here was with Bedrock PC. Mr. Ford contracted with Bedrock 1099 PC. Bedrock Consultants was who contracted with ConocoPhillips, however, in the terms of that Bedrock Petroleum specifically states it is entering into the work that will be performed by its affiliates. Affiliates is a fully owned entity defined as, you know, an entity of Bedrock Petroleum. Here the record shows that Bedrock PC is 100 percent owned and is an affiliate of Bedrock Consultants. So that's what makes that argument irrelevant? Yes. In your opinion? Yes. Okay. And with that, I'll concede the rest of my time to Ms. Cheesman. Good morning, Your Honors, and may it please the Court. My name is Kimberly Cheesman, and I represent appellant ConocoPhillips Company. As my colleague Ms. Grant mentioned, I will address why the district court erred in refusing to compel arbitration in two ways. First, because ConocoPhillips is a third-party beneficiary of an arbitration agreement between Ford and Bedrock PC, and second, because ConocoPhillips' agreement with Bedrock Petroleum, which was explicitly incorporated into Ford's agreement with Bedrock PC, also requires arbitration. So going to the first point on why ConocoPhillips is a third-party beneficiary of the Ford-Bedrock PC arbitration agreement, and this, Judge Haynes, goes to your question too about why Newman does not control here. So as the entity seeking to establish third-party beneficiary status, ConocoPhillips must demonstrate that one, the parties intended to secure a benefit to ConocoPhillips, two, the parties entered into a contract to benefit ConocoPhillips, and three, the parties intended to grant ConocoPhillips the right to be a claimant in the event of a breach. And courts read the contract on a whole in determining this third-party beneficiary status. And when read as a whole here, ConocoPhillips is a third-party beneficiary based on several provisions of the Ford-Bedrock MCA, and I want to focus on four provisions, and these four provisions are material because these similar provisions did not exist in the Newman and Plains case. So turning to the provisions, first I want to focus on Section 2, which Ms. Grant touched on briefly. Section 2 of the Ford-Bedrock PC MCA is found at Record Site 402, and in Section 2, Ford acknowledges the existence of a master services agreement between ConocoPhillips and Bedrock Petroleum. Ford, in Section 2, also acknowledges that he has access to the ConocoPhillips-Bedrock Petroleum MSA, and notably, in Section 2, Ford acknowledges that he agrees to the provisions of the MSA, including any and all indemnities. Now this indemnity portion is important because in Newman, this Court held in footnote, or this Court noted in footnote 47, that Plains waived the argument on whether indemnity obligations created a third-party beneficiary status for Plains. So in Newman, the Court did not address whether the presence of indemnity obligations conferred a third-party beneficiary status. That's been a main focal point of ConocoPhillips, and that's important because Texas courts frequently hold that the presence of an indemnity obligation does, in fact, confer third-party status. I will refer the Court to two cases that discuss this, which is ConocoPhillips v. Graham and Invery-Sitgo Petroleum. So not only was this indemnity obligation argument missing from Plains, which we have here, there's also another provision contained in Section 6. So Section 6 of the agreement contains Ford's agreements that he would abide by ConocoPhillips policies, and it delineates several policies, including the fact that Ford would agree to ConocoPhillips drug and alcohol policies, that Ford would agree to ConocoPhillips safety training certifications, and most notably, that Ford would agree and make himself familiar with ConocoPhillips rules and regulations and adhere to them. So in his agreement with Bedrock, he is acknowledging that he will adhere and agree to ConocoPhillips policies. And again, this provision is missing in the Newman case, and this Court in Newman held one of the reasons why third-party beneficiary doctrine was inapplicable, because there was nothing that provided Plains with any sort of recourse in the event of a breach, because nothing in that agreement showed that Newman agreed to follow Plains policies in the way that Ford agreed to do so here. The third provision I want to talk about is Section — Was there a rule of regulation or a policy that you had to arbitrate? Yes, in the — yes, because the MSA, it contains a requirement that any dispute had to go to arbitration. Well, that was in a contract between ConocoPhillips and Bedrock. What was the policy of ConocoPhillips that everybody that worked for it had to arbitrate? Yes, yes, Your Honor. Is that shown to Ford? It was made available to Ford. So there is language in the record at 402 where a copy of the relevant MSA that contains that requirement is made — A policy at ConocoPhillips' job that its employees have to arbitrate. Was there such a policy? Well, there's a distinction, because this was not an employee of ConocoPhillips, so that — Well, that's what I — did — he's saying in Section 6, I agree to abide by ConocoPhillips' policies, dah, dah, dah, dah, rules and regulations. Did it have a policy that whoever worked for it in whatever capacity had to arbitrate? I am not aware of whether — Then why are we talking about Section 6? Because this is a difference — Section 6 is important because it's a difference between this case and Newman, as in, in Newman there were no contractual obligations that you had to comply by the customer, or in that case, Plains policies. But also in Section 13, I want to talk about the entirety provision in which — this is a piece that's also missing from the Newman case and why it also distinguishes here — is in Section 13, Ford agreed that his agreement with Bedrock PC, together with any documents incorporated explicitly including the relevant MSA, is the sole and entire agreement of the And this incorporation by reference point is also important, and I'll touch on that briefly, because this incorporation by reference is a separate doctrine, and that was not a doctrine that was issued in Newman. And last, the fourth provision I want to touch on is Section 12. So Section 12 of the Ford-Bedrock MCA contains a broad arbitration agreement in which Ford agreed to arbitrate any claims that arose or related to the MCA, which again incorporates ConocoPhillips and Bedrock Petroleum's MSA, and that is notably broader than the provision in Newman, which was limited to only claims between — that have arisen or will arise out of the employment or termination from employer. So on whole, these provisions, the plain language of these provisions, show that there was an intent to secure a benefit to ConocoPhillips to enter into the master consulting agreement for the benefit of ConocoPhillips, including the fact that there would be indemnity obligations. Now the — I'm just wondering if Ford is not wanting to, you know, think that the — or wants to say that the Bedrock contract is irrelevant, then why does Conoco owe him anything? I would agree with that. I mean, he's trying to avoid it, and I agree with that sentiment. Now I want to talk about the second point, which is — Can I just ask you the same question? Sure. If your position is that Section 13 incorporates the ConocoPhillips-Bedrock Master Service Agreement, including the exhibit, could you compel Ford to sign — he agreed to sign it. Can't you compel him to sign it, say it's, you know, a constructive assignment? I mean, sign it. I don't think you can do that after the fact, because he is no longer his — is a contractor with ConocoPhillips, and the claims here are all behind — a period of time behind. Well, he either agreed or he didn't. Right. That's my point. And if he agreed, it's just — it seems like you would be able to say, well, you're bound by it. Right. You might as well sign it. I mean — I mean, I think — Well, and because he had already signed one with Bedrock PC — I mean, you asked the question, why didn't he just sign Exhibit H. So you're saying it's — he has effectively signed it. Yes. He has effectively — It doesn't matter because he effectively signed it by — Yes. Now, on my second point, I want to touch on briefly, because I see I'm on yellow, is the incorporation by reference doctrine is a separate and distinct basis in which a non-signatory like ConocoPhillips can compel arbitration. And this is important because this doctrine, incorporation by reference, was not a basis for arbitration in Newman. It was not a basis for arbitration in Kennedy. And it was not a basis for arbitration in Hinkle. So this Court's three recent cases addressing arbitration in the FLSA context did not address this incorporation by reference doctrine. And in Ford's response brief, he frequently cites to language in Newman in opposing application of this doctrine. But to be clear, this doctrine was not an issue in Newman. And so the language that is cited to oppose it is misleading because the Court didn't address it. It's a separate test than the basis for compelling arbitration in Newman. And I see I'm out of time. Good morning, Your Honors, and may it please the Court. My name is Rex Birch, and I represent Mr. Ford. Arbitration is a creature of contract between consenting parties. Conoco has no arbitration agreement with Mr. Ford. What about Section 13 in the Ford-Bedrock agreement? It says it incorporates explicitly herein, explicitly including the relevant MSAs. The relevant MSA, the Bedrock-ConocoPhillips agreement? So, no, because in the Ford agreement, MSA is a defined term. MSA means a contract entered into by Bedrock PC 1099. There is a different term that is used when they mean Bedrock broadly to include all the Bedrock industries. I believe that's Bedrock group. They already explained that, the connection of all of these companies in the deal with Conoco, so the Bedrock PC is in that contract because they're the affiliate, is in the agreement with Conoco. Conoco's agreement with Bedrock consultants is not affiliates. And so it is an affiliate. Yes, but it includes the affiliates. That was the argument that was made. And so the affiliates are in the bucket. So that argument doesn't win the day. And so let me push back on that a little bit. In the Ford agreement, which is the document that supposedly incorporates some other agreement, when you are incorporating by reference, which of course you can do, contracts do that every day, right? You have to plainly refer to a specific document. You have to be able to read the document that you are agreeing to and say, okay, this is the document that's incorporated. That's the document Mr. Ford had. The document Mr. Ford had says, I am referring, this contract refers to a contract between Bedrock PC 1099 and some customer, whether that be Bedrock Petroleum, whether it be Conoco, whether it be... How did he get to Conoco if Bedrock PC 1099 just was clueless about that? How did he get to Conoco? He got there through Bedrock PC because Bedrock PC's parent had a deal that included affiliates with Conoco. I mean, why does Conoco owe him anything? I understand this is an arbitration case, so maybe this is getting outside the question here, but to me, if somebody shows up and starts mowing my lawn that I never hired, I have nothing to do with, do I owe them money because they just decided to mow my lawn? So if you accept, if you suffer or permit somebody to work under the FLSA, yes, you owe them money, right? I'm just saying somebody mows my lawn, I had nothing to do with it. No, I get that. Somebody just, you know, you're out of town and the next door neighbor mows your lawn and says, hey, you owe me a hundred bucks. They don't owe that to you, right? Okay, so this guy shows up at Conoco, he knows that that's not, that he's not getting paid by Conoco, he's getting paid by Bedrock. So he knows that there's a deal between who's paying him and who he's working for. Now, that doesn't mean it's the right deal and all that, okay, I'm not getting into that, but I'm just saying I'm a little clueless how he can claim Bedrock has nothing to do with this, I'm just with Conoco, when, how the heck else would he have gotten there and how the heck else would he be owed anything sort of more than whatever the current minimum hourly rate is? So under the contract that he has with Bedrock PC 1099, it says if our customer hires you, right? I heard them say earlier today, oh, we just assign them and the folks at Conoco have nothing to do with it. That's contrary to the law. Did he enter into an agreement with Conoco? No, he did not enter into an agreement with Conoco. So again, why is he owed anything more than the minimum wage and then the one and a half of that for overtime? What's his argument going to be even if he's in court or with an arbitrator on that? Isn't it going to be the Bedrock deal? Is it going to be the Bedrock deal? No. It'll be what Conoco paid. I mean, who you receive the money from is largely- If he has no agreement with Conoco, why is he owed anything more than minimum wage? Even assuming, arguendo, he's owed something that he's not volunteering. Sure. Yeah, yeah, yeah. I get it. I'm assuming he got paid more than minimum wage. He did. Okay. So why is he owed more if he doesn't have a deal with Conoco? I'm just finding this a very hard case to understand because, okay, you end up in court and that's going to be your argument. We're not going to talk about the Bedrock deal. Oh, no, no, no, no, no, no. Well then, Conoco can say, okay, we owe you minimum wage plus the one and a half and I'm sure Ford probably got paid that. Okay. So liability under the FLSA is not based on contract. Going back time immemorial from 1938 to now, liability under the FLSA is broader than that that exists under common law or that exists under contract. You can be an employer under the FLSA even if you have an express contract that says, I'm not your employer. I get that, but that's because ... So if Conoco had a deal with Ford that said, you're not my employee, but I'm going to pay you $50 an hour and then it turns out he is the employee and all that. I get that, but you're saying there's no deal with Conoco and you're saying that the Bedrock deal is irrelevant. So I am really struggling with whether this goes to court or an arbitrator, how you have a case. Again, maybe that's irrelevant. You'll go to court if we end up affirming. You'll go to an arbitrator if we end up reversing, but it's a little bit of a struggle for me why you keep arguing strongly, Bedrock, get out of here, because it seems like you need to deal with Bedrock to show that that minimum wage ain't minimum. I'm not saying Bedrock, get out of here. What I'm saying is Ford's deal with Bedrock, to the extent it incorporates anything, it refers to a deal that was, quote, entered into by Bedrock PC 1099. That is not the document that they keep referring to. It says expressly this document is entered into by ConocoPhillips and Bedrock Petroleum. There are times when it makes reference to people that are outside those two things, but when it does, it says if these people are going to enter into an agreement, if there's going to be a work, I think they use company order or work order is the term, if there's going to be that, that's going to be a separate contract that's then going to have terms similar to this. Right? I mean ... So you're saying there will be no discussion of the Bedrock agreement when you go to court on this? The Bedrock, the agreement between Bedrock Petroleum, let's be clear here, because all of these contracts use defined terms, and although they both use the Bedrock moniker, they are both specific as to when they mean Bedrock Petroleum and when they mean Bedrock PC, right? The contract between Bedrock Petroleum and Conoco, which everybody agrees Mr. Ford never saw and which is not referenced in his agreement, because his agreement makes reference to a contract entered into by Bedrock PC 1099, and the agreement between Conoco and Bedrock Petroleum ain't that. Okay. So if you were in ... So let's say we affirm, now you're in court on the merits. What are you going to rely on? No agreements? You're just going to rely on what a common law person would pay for it, or what are you going to rely on for the notion that it needed to be more than minimum wage or minimum wage times one and a half? You mean what am I ... I guess maybe Judge Hayes, I'm just not ... I'm not understanding your question. Okay. You show up in court and say, we should have been paid more. What are you going to rely on for that notion? Don't you need to look at some contract for that? No.  Okay, but they have a deal with that entity. There was an arrangement, right, for Conoco to pay some amount of money. They paid some amount of money, right? But that's not relevant to ... What you're saying, these contracts will not be at issue at all? There'll be nothing about them? It's all just going to be what he was told out in the field, you'll get this amount? There will be nothing from Conoco's deal with Bedrock Petroleum because we didn't know about that deal. We didn't agree to that deal. It's not part of our deal. Okay, so what about Ford's deal with Bedrock? What's that? Will Ford's deal with Bedrock be what is discussed? Which Bedrock? Any Bedrock. With his agreement with Bedrock PC 1099, I imagine someone will admit it into evidence. Although, it also doesn't state, here's how much money we're going to pay you. It also doesn't ... I mean, which I take to be your point, like how am I going to show how much money you earn? It sure won't be that contract because it doesn't say it. Well, how are you going to show what the deal is? Because you're claiming that he's not an independent contractor, so ... Correct, yes. I'm just trying to figure out, how's he going to show how he got there? How's he going to show how he got to Conoco? How's he going to show how he was an employee of Conoco? If he's going to not ... You don't think that Conoco could put this contract into evidence? They probably could put this contract into evidence. Okay, so why isn't this then a little bit like that Weekly Homes case, 180 Southwest 3rd, 127, that involved the daughter that was trying to sue, and she didn't have any contract, but they said your suit involves some of that contract, so yes, you are subject to the arbitration. I mean, the contract between Mr. Newman and Plains All-American would almost certainly come in, because unlike this, this contract, it did have some relevant information. And my friends on the other side say, oh, that contract's different, because Mr. Newman never agreed to do anything on behalf of the client, and that's just not true. I mean, Judge Willett went through some examples of the things, including ... So did Newman have a Section 2? What now? Did the Newman people have a Section 2, such as the Section 2 they keep citing, and the Section 13 they keep citing? Was that in the Newman contract, the relevant Newman contract? There was ... Incorporation by reference was not an argument that was raised by the folks at Plains All-American, but again, I mean, when you ask ... Texas law is crystal clear on this point, right? If you use a defined term, right, I think we can agree on it. I mean, this is one of the things that Williston and Corbin would agree on, right? When you use a defined term, right, the courts are basically obligated to follow that defined term. No, I understand that. I mean, I was a state district judge. She was on the Texas Supreme Court, so I think we have a little bit of a sense, and Judge we can, but I'm just asking you, obviously you can have a case, and the next case can be a different case. So you can distinguish the current case from a past case, and they are attempting to distinguish this case from Newman. So I'm asking you, what's your response to that distinction? So a parent-child relationship is treated differently under Texas law than independent businesses contracting with each other. There's a special relationship. I mean, you see that in the way that direct benefits estoppel operates under Texas law. No, I'm talking about Newman. I'm not talking about, I'm done with NRA Weekly, but what about Newman? Their distinction is Section 2, Section 13, and then some of the other sections, but those are the two that they talk about every page or something. Right, their distinction is that we subjectively understood Bedrock PC-1099 to mean Bedrock Petroleum, even though we never told that to Mr. Ford, and indeed the contract that Mr. Ford was given uses two different terms when it's talking about anybody from Bedrock versus the specific Bedrock entity at issue here, right? So you can't incorporate by reference, right, a document signed by Judge Owens, right, by saying, oh, that means one signed by Rex Burch. Those aren't the same thing, and Texas law, NRA, Merrill Lynch, which I know y'all are not in agreement, even with affiliated companies, and here we pile on top of that the fact that we're using defined terms, right? They know how to say Bedrock writ large, right, but that's not what they use when they're identifying the document that's incorporated. They use the specific entity that Mr. Ford has a contract with. Mr. Ford testified to this, right, said, look, if you had handed me that contract and said, is this the relevant MSA, I would have said no, because my contract says we're incorporating a contract between Bedrock PC 1099 and somebody, and this is explicitly on page one uses those words. This is something entered into between ConocoPhillips and Bedrock Petroleum, which is not the same entity. Who did Ford agree with on what he was going to be paid? Who told him what he was going to be paid? I believe, I'm not sure, and I know this isn't in the record, but I believe that the information was communicated from Conoco to Bedrock, this is what we're paying for this position, and then it got to Mr. Ford. So, I'd also like to say, let's assume that the, for argument's sake, that we're going to use this subjective definition of Bedrock to mean something other than Bedrock PC 1099, and we're going to say that's close enough for government work, we're going to allow that to mean Bedrock Petroleum. Even if we do that, when we look at the terms of the MSA that they put forward, even when we look at that, that arbitration agreement, right, and recall, as you pointed out, sometimes it refers to the company in broad form, you know, Conoco and all its affiliates, Bedrock and all its affiliates, sometimes it uses it narrowly, sometimes it means just Conoco and just Bedrock Petroleum. The arbitration agreement in that document says it is between Conoco and Bedrock Petroleum, right? So, even if that agreement was incorporated into his agreement, it still wouldn't change those terms, it would just mean that the rest of the contract is part of his contract, and when it referred to him as, I believe the term is contractor personnel, it would give him certain obligations, and Judge, I don't want to miss my chance to answer the question that I know you asked both of them. The term of the contract, section 6-3, doesn't say, again, assume Mr. Ford is part of that contract somehow, right, assume that he is, it doesn't say Ford will agree to the arbitration agreement that's attached. There's a mandatory form that's attached, I believe Exhibit 1, that they require that people sign. Even if we assume that that applies, it doesn't say he'll agree to it. It says Bedrock Petroleum will give it to him and get him to sign it, and then it says what happens if they don't do that, right? If they don't get him to sign it, then what happens is Bedrock Petroleum has to indemnify Conoco. I mean, we got kind of sidetracked, and I apologize for that, but I do want to touch some other issues, because to me, in large part, this case is resolved just by holding people to the terms that they defined in their own contracts, right? Bedrock MSA is a defined term, and it means a contract entered into by Bedrock PC-1099 in the Ford agreement. So if they want to incorporate some other agreement, it has to be something like that. I would also like to address just some of the third-party issues that Ms. Cheesman talked about. In Section 5 of the agreement, the representations and warranties that Mr. Ford makes, he makes explicitly to Bedrock PC-1099. The first sentence of Section 5 says, consultant warrants, that's Mr. Ford, warrants and represents to Bedrock, and in this contract, that means Bedrock PC-1099, the following. So all those representations were made not to Conoco, but to Bedrock. Newman, I think, obliterates this, because it explains that, yes, you can say, I'll agree to keep, as was the case in Newman. I'm sorry, have I expired? I've run over my time. Thank you very much for letting me know. Just a couple of points to address that Mr. Birch raised in his argument. First, this idea of Mr. Ford didn't see the Conoco Ford MSA, so therefore he can't be bound by it. I will note that specific Section 2 says, consultant agrees to the provisions of the MSA as Bedrock's contractor. A copy of the relevant MSA shall be provided to consultant in the offices of Bedrock upon reasonable request. So the fact that the offer, the agreement was there, he could go look at it, he could review it, but he didn't, he can't then escape, well, I didn't go look at it, I didn't get a copy, therefore I'm not bound by that agreement, and that agreement is not incorporated. That just, he's specifically given a copy, so the fact that he didn't get one doesn't now absolve him from the obligations that he agreed to. Your contention is it just doesn't matter that there were very defined terms in Ford's agreement with Bedrock, Bedrock is Bedrock PC 1099, Conoco's agreement with Bedrock, Bedrock Petroleum, doesn't matter. Well, my argument is then when you look at the agreement with Bedrock PC, excuse me, Bedrock Petroleum and Conoco, that is also an agreement between Bedrock PC and Conoco because it defines affiliates to include, it's binding affiliates, those affiliates being one of them, Conoco, Bedrock PC. It just doesn't say all that in the agreement. It says that when you read the provisions all together in the Bedrock MSA, it doesn't go into that in the Bedrock PC argument with, excuse me, agreement with Mr. Ford, but by incorporating, it says Bedrock's bound by an agreement with its customer. The agreement that bound Bedrock PC to its customer here, Conoco, was that MSA when you walk through the terms because the MSA with Bedrock Consultants specifically states it's binding the work with the affiliates, that affiliate under the defined terms in that would be Bedrock PC. In addition, I'll note that under the ConocoPhillips Bedrock Consultant Agreement, it specifically states all work shall be performed by contractor group personnel. When you look at the definition by contractor group personnel, it states any other individuals utilized by any member of the contractor group to perform, oversee, direct, or accomplish the duties and obligations pursuant to this agreement. Again, looks like what contractor group is defined as. Contractor group is defined in part as contractor, being Bedrock Petroleum, and its affiliates, which again, the defined term affiliates includes Bedrock PC. So yes, you look at the defined terms, but you have to read the contracts as a whole, and when you do that, it's clear that Bedrock PC, too, was bound by the agreement with Bedrock PC was a party to the MSA with ConocoPhillips. That then would be the relevant MSA that is in turn referenced here. Otherwise, you'd have to have Bedrock PC would have to enter into an agreement as also Bedrock Petroleum. The incorporation by reference automatically binds Bedrock PC to the agreement. Your time has expired. Thank you. The court will take a brief recess.